**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ITALO PACHECO TERAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No:  4:21CV1325 HEA** |
| | ) | |
| **PAUL BLAIR,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION, MEMORANDUM AND ORDER

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No. 1] on November 9, 2021. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted on January 25, 2022.  Petitioner then filed his Traverse on March 25, 2022. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons set forth below, the Response is well taken, and the Petition will be denied.

### Factual Background

Petitioner was convicted of first-degree burglary, first-degree rape, first-degree sodomy, first-degree sodomy, first-degree sodomy, and abuse of a child by a jury. He received sentences with terms of five years, fifteen years, five

years, five years, five years, and five years' imprisonment in the Missouri

Department of Corrections, with the sentences arranged so that Petitioner is

to serve a total of thirty years.

Petitioner appealed his conviction which was affirmed. Thereafter, he filed a

Motion for Rule 29.15 post-conviction relief.  An amendment to the original

motion was made. On remand from the appellate court, the motion court found the

amendment untimely. The motion court found the motion to be meritless. The

appellate court affirmed.

The Missouri Appellate Court found the following facts from the evidence

established at trial:

> One night in September 2014 at approximately 2:00 a.m., Teran went to the
> home of his ex-wife, N.L., where she lived with her eight-year-old daughter,
> A.A., and her one-year-old son, S.P. Teran entered N.L.'s home without her
> permission using a key he kept after he moved out a few months earlier.
>
> Teran went into N.L.'s bedroom, where she was sleeping, carrying a bottle
> of chloroform, rope handcuffs, a camcorder, a digital camera, and an iPhone.
> N.L. woke up and called for help. Teran forced her back down and held a
> cloth soaked in chloroform over her mouth until she passed out. Teran then
> tied N.L. to the bed and raped her.
>
> N.L.'s daughter, A.A., heard her mother's cry for help and woke up. She
> was scared, but she went to help her mother. Teran told her to go back to
> bed. When she refused, Teran held a cloth soaked in chloroform over her
> mouth as well. A.A. struggled to breathe and passed out. Teran put duct tape
> over A.A.'s mouth so she would not scream when she woke up.
>
> Teran then raped N.L. repeatedly for more than an hour while she was
> unconscious. N.L. woke up three times during the assault, and Teran
> continuously used chloroform to make her pass out again. Teran had vaginal

and anal intercourse with N.L. as well as numerous other sexual acts. Teran used his camera and iPhone to take pictures of N.L. while he was raping her.

Due to the chloroform, A.A. was unconscious for about an hour. When A.A. awoke, she had duct tape over her face and in her hair. She went to the bathroom and took the duct tape off. A.A.'s face hurt from taking the tape off, she had abrasions and chemical burns on her face from the tape and the chloroform, and she had a stomach ache. A.A. was scared so she went back to her bedroom and eventually fell asleep. When she awoke, she went to check on her mother. A.A. knocked on the door and asked, "Mom, are you in there?"

Teran allowed N.L. to check on A.A. and give her medication for her anxiety. While N.L. was out of the bedroom, she got her phone and called 911. N.L. grabbed her daughter, and they fled to a neighbor's house. The police arrived while Teran was leaving the house with a bag containing the bottle of chloroform, rope, camcorder, digital camera, and his iPhone. The police arrested Teran and he confessed.

Teran was charged with nine counts. The counts included first-degree burglary (Count I), two counts of felonious restraint (Counts II and VIII), first-degree rape (Count III), three counts of first-degree sodomy (Counts IV, V, and VI), abuse or neglect of a child (Count VII), and stalking (Count IX). A jury convicted Teran on Counts I through VIII and acquitted him on Count IX.

Teran was sentenced to an aggregate period of thirty years in prison.

Petitioner now raises three grounds for relief, alleging ineffective assistance of counsel.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has

been decided on the merits by a state court, AEDPA limits the scope of judicial

review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v.*

*Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).  Furthermore, the *Williams* Court held that "a federal

habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state court decision applied clearly

established federal law erroneously or incorrectly." 529 U.S. at 409.

4

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct, and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

**Ineffective Assistance of Counsel**

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2a013) (quotation marks and citation omitted); see also *Strickland*, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773

F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a

showing of both deficient performance and prejudice, a "finding that no prejudice

exists is sufficient to conclude that counsel was not constitutionally ineffective –

[courts] need not make a determination regarding deficiency*." Holder v. United

States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential

standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012)

(quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about
> the effect of the alleged deficiencies of counsel on the outcome of the trial,
> focusing on whether it is "reasonably likely" that the result would have been
> different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*,
> the likelihood of a different result must be "substantial, not just
> conceivable." *Id*. Under AEDPA, [federal courts] must then give substantial
> deference to the state court's predictive judgment. So long as the state court's
> decision was not "contrary to" clearly established law, the remaining
> question under the "unreasonable application" clause of § 2254(d) is
> whether the state court's determination under the *Strickland* standard is
> unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562
> U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet,
> and "even a strong case for relief does not mean the state court's contrary
> conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not

whether counsel's actions were reasonable. The question is whether there is any

reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington*, 562 U.S. at 105.

In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [his or her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in

order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Here, Petitioner states three grounds for relief.

## <u>Ground One</u>

In Ground One, Petitioner claims his appellate counsel was ineffective because counsel did not brief the claim that the trial court should have suppressed Petitioner's pretrial statement because he did not waive his right to counsel before speaking to the police. The postconviction appellate court considered Petitioner's claim and found it to be without merit.

Petitioner raised this issue in his post-conviction motion.  The post-conviction appellate court found Petitioner had not established a breach of duty by counsel nor prejudice.

> Movant spoke with an O'Fallon Police Department officer at the scene of his arrest. Movant explained to the officer he was a citizen of the United States, had lived in the United States for a decade, and held a college degree. The officer left Movant in a patrol car, spoke to his fellow officers at the scene, then returned to Movant. The officer advised Movant of his Miranda rights on

9

video and Movant stated, "I do not have an attorney so I would like
one." Despite Movant's statement, the officer questioned Movant
for approximately five minutes and Movant answered his
questions.

Movant was transported to a cell at the police station. He
was visited twice in his cell by an officer. The officer's first visit
was to collect Movant's personal belongings. On the second visit,
the officer photographed Movant. During the second visit, Movant
initiated a conversation with the officer. Movant said he wanted to
tell his side of the story. Movant was taken to an interview room
in the police station to meet with a detective. Movant confirmed he
initiated the request to talk to the detective. The detective
informed Movant of his Miranda rights and provided Movant with
a written waiver form. Movant waived his right to have counsel
present verbally and in writing. During the interview, Movant
answered the detectives' questions and wrote an apology
statement to the victims while the detectives were out of the room.

Before trial, Movant moved to suppress his statements from
the scene of arrest and his statements to detectives in the
interview room. He argued they were obtained in violation of his
5th Amendment rights. The motion court granted Movant's motion
to suppress the on-scene statements but admitted the contents of
Movant's interview with the detective into evidence.

Movant now argues his appellate counsel on direct appeal should have
contested the admission of Movant's statements to the detective. In
Movant's view, the fact he was questioned at the scene of his arrest in
violation of his Miranda rights would invalidate the interrogation he
initiated later. Movant argues because he told officers at the scene of his
arrest he would need counsel and that interrogation nonetheless continued,
he had "reason to doubt the efficacy of having requested assistance of
counsel."

Movant "acknowledges the general proposition that an individual in custody
can rescind a request for counsel by initiating communication with police"
yet argues Movant's decision to initiate contact is exempt from this
principle. He notes police may not engage in behavior that is "reasonably
likely to evoke" the recantation of a suspect's request for counsel through

interrogation or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).
*Innis* stands for the principles that (1) a suspect's perception of police conduct is relevant to determining whether interrogation has occurred and (2) that courts should determine whether coercion has happened by looking to the words and actions of the police. *Id*. Movant also underscores the duty of police to "scrupulously honor" a suspect's invocation of the right to cut off questioning. *State v. Rice*, 573 S.W.3d 53, 69 (Mo. 2019) (citing *Michigan v. Mosley*, 423 U.S. 96, 103-04 (1975).

The record does not support Movant's argument. To determine whether a suspect's invocation of their rights was scrupulously honored, courts will consider five factors: (1) whether the interrogation ceased; (2) whether the interrogation was resumed only after the passage of a significant period of time with new Miranda warnings; (3) whether the object of any subsequent interrogation was to wear down the suspect; (4) how many subsequent interrogations were undertaken; and (5) whether subsequent questioning involved the same crime. *Id*. Movant's only interactions with police between arrest and interview were two visits to his cell to collect his personal items and photographing him. The officer did not attempt to coerce Movant into speaking; Movant initiated the conversation where he requested an interview with detectives.

Unlike in Rice, where questioning only halted for 20-30 minutes before officers returned to ask more questions without providing a new Miranda warning, Movant remained in his cell for a period of hours after his arrest, initiated contact with police, and received a fresh Miranda warning before questioning. These factors favor the State. Further, Movant was only questioned by detectives once. This factor also favors the State. In *Rice*, police attempted to wear the defendant down by continuing to ask questions after the defendant stated, "I got nothing to say" and "I don't wanna talk." *Id*. at 70. Here, the police questioned Movant only after he asked to speak. At no point thereafter did Movant ask to end the interview. The *Rice* factors show the police "scrupulously honor[ed]" Movant's 5th Amendment right to cut off questioning.

Movant's appellate counsel testified at the motion court's hearing on this issue. Movant's counsel has 14 years' experience as an appellate attorney and handles multiple appeals every month. She testified it would have been frivolous to raise an argument that the contents of the second interview

should have been suppressed because she found Movant's waiver was knowing, voluntary, and intelligent. The motion court credited her testimony and found the result of Movant's trial and appeal would have been the same even if she would have raised the suppression argument because the other evidence supporting Movant's convictions was overwhelming.

We find no clear error in the motion court's ruling that Movant's appellate counsel acted reasonably and within her discretion by not raising a 5th Amendment argument on appeal. As we noted above, "[t]he standard for reviewing a claim for ineffective appellate counsel is essentially the same as that employed with trial counsel; movant is expected to show both a breach of duty and resulting prejudice." *Hosier v. State*, 593 S.W.3d 75, 87 (Mo. banc 2019) (citing *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005). Appellate counsel is not ineffective for failing to raise frivolous or non-meritorious claims on appeal and has discretion to strategically winnow out non-frivolous arguments in favor of other arguments. *Id*.

Here, appellate counsel reviewed the transcript of Movant's suppression hearing and concluded no meritorious argument existed to justify suppression of Movant's confession. The motion court concluded – and we agree – Movant's counsel did not fail to exercise the customary skill and diligence that a reasonably competent attorney would employ under similar circumstances. Further, we find no clear error in the motion court's conclusion that even if Movant's counsel had raised the issue, the result would have been the same because this Court would have rejected his suppression argument on direct appeal. Even if Movant's claim would have had merit, there was overwhelming physical and testimonial evidence establishing guilt. Movant suffered no prejudice through his counsel's strategic decision not to raise the issue on appeal. We find Movant has not shown his counsel's preparation and arguments on appeal fell below the standard guaranteed by the 6th Amendment. Accordingly, Movant's claims in Point 1 are denied.

The post-conviction appellate court followed the *Strickland* standard in

concluding no prejudice or breach of duty had occurred.  Thus, ground one does

not warrant relief. Counsel articulated her rationale for not raising the issue: the

12

argument was without merit. Counsel was under no duty to raise a meritless argument under the *Strickland* standards.

Moreover, Petitioner fails to raise a meritorious claim that he was prejudiced by counsel's failure to raise the issue.  Petitioner himself advised he wanted to talk with the police after he initially stopped answering questions.  His statement to the police came *after* he received his *Miranda* warnings for a second time. Petitioner voluntarily and knowingly waived his *Miranda* rights with respect to the second set of statements he made.  Ground One is denied.

**Ground Two**

In Ground Two, Petitioner asserts that counsel was ineffective because counsel did not object to the trial on counts 7 and 8.  He claims counts 7 and 8 violate his double jeopardy rights.

Petitioner did not raise this ground in the Motion Court. The Appellate Court applied a procedural bar to this claim.  Likewise, this Court finds that this claim is procedurally barred.  Petitioner does not satisfy the procedural bar exception. He has failed to show good cause and actual prejudice for failing to raise this claim. Ground Two is denied.

**Ground Three**

As the basis for Ground Three, Petitioner argues appellate counsel was ineffective for failing to raise his double jeopardy claim in his post-conviction

appeal.  This claim is likewise barred because Petitioner did not raise this basis on appeal and has failed to present good cause and actual prejudice.

Unpreserved claims cannot serve as a basis for reversing the judgment of conviction. A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). In order for this Court to consider this claim as not procedurally defaulted, Petitioner is required to demonstrate good cause and actual prejudice. *Murray,* 477 U.S. at 478. Petitioner fails to demonstrate cause for his procedural default, and he cannot establish any prejudice for the failure from the alleged unconstitutional errors. Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has not presented any new evidence of actual innocence or shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Abdi*, 450 F.3d at 338. Consequently, the claims raised in Grounds Four and Five are procedurally barred from habeas review and will be denied.

## Conclusion

For the foregoing reasons, the Court concludes that the grounds in Petitioner's Petition for Writ of Habeas Corpus are either procedurally barred or fail on the merits and must be denied in all respects.

## Certificate of Appealability

14

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the Court finds that Petitioner has failed to make the requisite "substantial showing." *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, a certificate of appealability will not issue.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 22nd day of March, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE